UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

IN RE: )
)
CAH ACQUISITION COMPANY #5, ) CHAPTER 11
LLC, )
) Case No. 19-10359
DEBTOR, )
)

**EMERGENCY CONSENT MOTION OF BANK OF HAYS FOR APPOINTMENT OF A TRUSTEE UNDER 11 U.S.C. § 1104**

Bank of Hays (the "Bank") hereby files its Emergency Consent Motion for Appointment of a Trustee Under 11 U.S.C. § 1104 (the "Motion"). This Motion is filed with the consent of CAH Acquisition Company #5, LLC (the "Debtor"). In support of the Motion, the Bank states the following:

**BACKGROUND**

1. On March 13, 2019 (the "Commencement Date"), the Debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code and thereby commenced this bankruptcy case (the "Bankruptcy Case").

2. Prior to the Commencement Date, the Debtor owned and operated a critical access hospital in Hillsboro, Kansas doing business as the Hillsboro Community Hospital (the "Hospital").

3. Prior to the Commencement Date, on December 30, 2015, the Debtor executed a Promissory Note in favor of the Bank, evidencing a loan made by the Bank to the Debtor in the original principal amount of $9,710,885.00 (the "Note"). A true and correct copy of the Note is attached hereto and marked as Exhibit A.

4. To secure the amounts owing under the Note, the Debtor executed a Mortgage in favor

of the Bank (the "Mortgage"), granting the Bank a first lien on the real estate located at 101 Industrial Rd., Hillsboro, Kansas 67063 (the "Real Estate"). A true and correct copy of the Mortgage is attached hereto and marked as Exhibit B.

5. The Mortgage was recorded in the Marion County, Kansas Register of Deeds Office on December 30, 2015 at Book 470 Page 993.

6. To further secure the amounts owing under the Note, the Debtor executed a Security Agreement in favor of the Bank (the "Security Agreement"), granting the Bank a security interest in all personal property assets of the Debtor (the "Personal Property" and together with the Real Estate, the "Collateral"). A true and correct copy of the Security Agreement is attached hereto and marked as Exhibit C. (The Note, the Mortgage and the Security Agreement, and all documents related thereto, are collectively referred to hereafter as the "Loan Documents").

7. The Debtor has failed to make the payment required under the Note since October 2018 and is in default under the Loan Documents.

8. As of January 7, 2019, the Debtor is liable to the Bank under the Loan Documents in the following amounts: $9,663,421.19 in principal, plus interest in the amount of $178,788.00 as of January 7, 2019, plus late fees in the amount of $125.00, totaling $9,842,334.20, plus interest thereafter at the rate of 7.0% per annum until paid in full together with collection costs, costs of title work, costs of publication, attorney fees and any funds advanced pursuant to the terms of the Loan Document, including for unpaid real estate taxes.

9. On January 9, 2019, the Bank filed a Petition for Foreclosure in the District Court of Marion County, Kansas (the "State Court"), seeking, *inter alia*, foreclosure of its mortgage on the Real Estate.

10. On January 11, 2019, the Bank filed a Verified Amended Petition for Foreclosure,

seeking foreclosure of its mortgage on the Real Estate and appointment of a receiver for the Collateral. A true and correct copy of the Amended Petition (without exhibits) is attached hereto and marked as Exhibit D.

11. On January 17, 2019, the Bank, along with other named defendants and creditors of the Debtor, filed a joint application for appointment of a receiver (the "First Receiver Motion"). A true and correct copy of the First Receiver Motion is attached hereto and marked as Exhibit E.

12. On January 18, 2019, the State Court granted the Application and entered its Order Appointing Receiver (the "First Receiver Order"). A true and correct copy of the First Receiver Order is attached hereto and marked as Exhibit F.

13. The First Receiver Order appointed Cohesive Healthcare Management + Consulting, LLC ("Cohesive") as receiver over the Debtor's property and gave Cohesive the authority to manage and operate the Hospital.

14. On February 26, 2019, the Bank filed an Emergency Motion for Order Granting the Receiver Additional Powers (the "Second Receiver Motion"). A true and correct copy of the Second Receiver Motion is attached hereto and marked as Exhibit G.

15. The Second Receiver Motion requested that the State Court grant Cohesive additional powers, including the authority to file a voluntary petition for the Debtor under the Bankruptcy Code.

16. The Bank filed a memorandum in support of the Second Receiver Motion (the "Second Receiver Memo"). A true and correct copy of the Second Receiver Memo is attached hereto and marked as Exhibit H.

17. The Second Receiver Memo set forth the following facts in support of the Second Receiver motion:

The Initial Report of the Receiver ("Receiver's Report"), attached as Exhibit A, paints a disturbing picture of CAH's mismanagement of the Hospital prior to the appointment of the Receiver. The Receiver's Report was filed on January 25, 2019, just one week after the Receiver was appointed. The Receiver's Report indicates CAH's mismanagement of the Hospital led to critical breakdowns affecting the Hospital's performance and its treatment of patients and employees. The most important detail revealed in the Receiver's Report is that the Hospital's laboratory was closed in December 2018 "due, in part, to inadequate supplies and loss of critical staff." Report at 2. Due to the laboratory closure, ambulances were being diverted from the hospital and the general surgeon was unable to perform any surgeries. *Id.* at 2, 4. According to the Receiver's Supplemental Report, the Receiver was able to successfully open the laboratory on February 8, 2018, and ambulances are no longer being diverted for emergency purposes. Receiver's Supplemental Report at 1, filed on February 13, 2019 ("Supplemental Report").

The Receiver's Report also shows CAH failed to pay critical invoices, and "[v]endors and suppliers have stopped providing critical supplies and services because of outstanding accounts payable." Ex. A at 2. The Receiver currently has no access to financial records outside of reports in the Hospital's system, and it appears invoices have not been entered into CAH's accounts payable system since October 2018. *Id.*

The Receiver's Report also indicates there are critical human resource issues affecting the Hospital's employees. The employees' medical, dental, and vision insurance have all been cancelled. *Id.* at 3. Prescription services for employees have been canceled due to a dispute between CVS Caremark and CAH's parent company, Empower HMS ("Empower"). *Id.* at 4. Workers' Compensation Insurance was cancelled in October 2018 due to non-payment. *Id.* The Hospital's DNO and Employment practices liability policies were cancelled in September and October 2018 due to non-payment. *Id.* A number of surgical services are not being offered either due to non-payment or to inadequate services. *Id.* The Receiver has learned that the Kansas Department of Revenue is investigating the Hospital and/or CAH for unpaid payroll taxes, which is evidence of CAH's insolvency. Supplemental Report. at 2.

CAH and Empower have refused to work with the Receiver to reinstate vital services to the Hospital. Ex. A at 5; Supplemental Report at 2. The Receiver's Report states CAH's owner or management team "shut off all email accounts of the Hospital and its employees on January 20, 2019," which was two days after the appointment of the Receiver. Ex. A at 5. The Receiver lacks access to the Hospital's computer and online networks, including domain names, email account access, and payroll information. *Id.* at 5-8.

Since the Receiver filed the Receiver's Report, the Bank has learned additional facts about the conditions at the Hospital. When the Receiver took control of the Hospital, the Hospital had no critical medicine on site, such as IV antibiotics.

Supplemental Report at 2. The Receiver described the Hospital's relationship with vendors and suppliers as "dire" at the time of the appointment of the Receiver. *Id.*

Following a January site inspection of the Hospital that occurred just prior to the Court's appointment of the Receiver, the Kansas Department of Health and Human Services ("KDHHS") issued a 29 page Statement of Deficiencies and Plan of Correction ("Deficiencies Report"), attached as Exhibit B. The Deficiencies Report indicates the Hospital is not in compliance with two federal regulations: 42 C.F.R. § 485.618 (Requirements for Emergency Services) and 42 C.F.R. § 485.635 (Requirements for Provision of Services). Ex. B at 1, 12. Based on these deficiencies and non-compliance, KDHHS notified the Hospital it intended to recommend termination of the Hospital's Medicare provider agreement by April 9, 2019, unless the necessary corrections are made (i.e., the provider agreement is the governing document allowing the Hospital to maintain a critical access designation for Medicare purposes). *See* KDHHS Email, attached as Exhibit C. Besides the conditions and services at the Hospital, the Deficiencies Report also details CAH has fallen behind on its payment to creditors, which affects the Hospital's ability to provide necessary medical services. Ex. B at 8.

The Deficiencies Report further indicates the Hospital is in violation of 42 C.F.R. § 485.627, which requires the Hospital have a governing body that is responsible "for determining, implementing and monitoring policies governing the CAH's total operation and for ensuring that those policies are administered so as to provide quality health care in a safe environment." 42 C.F.R. § 485.627(a). The Deficiencies Report states the Hospital "lacked evidence the Governing Body ensured the [Hospital] followed the Medical Staff Bylaws . . . and failed to ensure they provided laboratory services by agreement or arrangement of medical management of emergency medical conditions. This failure has the potential to cause poor patient outcomes." Ex. B at 7. The Deficiencies Report further states the Hospital's "CEO and governing body failed to ensure the staff could provide emergency services as directed by their policies, procedures, and protocols for medical management of emergency medical conditions." Ex. B at 11.

While the Receiver currently has the power to conduct the business of the Hospital, the Receiver does not have the ability to manage the corporate affairs of CAH in any way. Without the ability to manage the corporate affairs of CAH, the Receiver is unable to bring the Hospital into compliance with 42 C.F.R. § 485.627, which will likely result in closure of the Hospital.

Undersigned counsel has recently learned CAH's parent company, Empower H.I.S., LLC, and other companies related to CAH, are currently under criminal investigation by the United States Department of Justice. January 23, 2019 Filing, attached as Exhibit D. Upon information and belief, the Department of Justice's investigation relates to CAH and its parent company's management of healthcare facilities nationwide. The existence of the criminal investigation further supports an order extending the powers of the Receiver to include management of the corporate affairs of CAH.

5

151465514.1

Case 19-10359    Doc# 13    Filed 03/14/19    Page 5 of 9

> The Bank has also learned of at least two other similar lawsuits involving CAH-related entities and their mismanagement of hospitals. In the Western District of Tennessee, the court has appointed a Special Master to review the affairs of a hospital due to the plaintiff's claims of mismanagement of the hospital by CAH Acquisition Company 11, LLC. *See Stone Bank v. CAH Acquisition Company 11, LLC*., Case No. 2:19-cv-02040-SHL-dkv (Special Magistrate Appointment Order filed Feb. 1, 2019). In the Western District of Oklahoma, the court granted the City of Prague, Oklahoma's motion for a temporary restraining order that enjoined CAH Acquisition Company 7, LLC from terminating any hospital services in the City of Prague. *See City of Prague, Oklahoma v. CAH Acquisition Company 7, LLC*, Case No. CIV-19-89-G (Temporary Restraining Order filed Feb. 7, 2019). The Oklahoma case is scheduled for a hearing on the City of Prague's motion for appointment of a receiver on February 19, 2019. *See id*. These cases, along with the situation in Hillsboro, should guide the Court in finding that CAH entities nationwide are mismanaging hospitals, and other Courts are finding it necessary to restrain or remove the powers of CAH entities. The situation in the City of Hillsboro is not an isolated event, and the Court should increase the powers of the Receiver as argued below to prevent irreparable harm to the City of Hillsboro and its residents.

*See* Second Receiver Memo at pp. 2-6.

18. On March 5, 2019, after a full evidentiary hearing involving witnesses and exhibits, at which counsel for the Debtor – W. Thomas Gilman of The Hinkle Law Firm – was present and had an opportunity to be heard, the State Court entered an Order Granting the Bank's Emergency Motion for Order Granting the Receiver Additional Powers (the "Second Receiver Order"). A true and correct copy of the Second Receiver Order is attached hereto and marked as Exhibit I.

19. Paragraph 3(e) of the Second Receiver Order granted Cohesive the "sole authority and power to file a voluntary petition under Title 11 of the United States Code." *See* Exhibit I at ¶ 3(e).

20. Cohesive then commenced this Bankruptcy Case.

## ARGUMENT

21. Under § 1104(a)(1) of the Bankruptcy Code, the court "***shall*** order the appointment of a trustee . . . for cause, including fraud, dishonesty, incompetence, or gross mismanagement . . .." (emphasis added). The language of § 1104(a)(1) of the Bankruptcy Code is mandatory. The Bank suggests that such cause exists to appoint a trustee in the Bankruptcy Case.

6

22. The undisputed facts of this case establish cause to appoint a trustee pursuant to § 1104(a)(1) of the Bankruptcy Code. The State Court appointed Cohesive as receiver for the Debtor after evidence was presented of the following:

    a. The Debtor's mismanagement of the Hospital led to critical breakdowns affecting the Hospital's performance and its treatment of patients and employee;

    b. Due to the laboratory closure, ambulances were being diverted from the hospital and the general surgeon was unable to perform any surgeries;

    c. The Debtors failed to pay critical invoices, and vendors and suppliers stopped providing critical supplies and services because of outstanding accounts payable;

    d. The employees' medical, dental, and vision insurance had been cancelled due to nonpayment;

    e. Prescription services for employees have been canceled due to nonpayment; and

    f. The Debtors' prior management team shut off all email accounts of the Hospital and its employees on January 20, 2019, so Cohesive lacks access to the Hospital's computer and online networks, including domain names, email account access, and payroll information.

23. For these reasons, cause exists to appoint a trustee in the Bankruptcy Case to ensure that the former manager of the Hospital will be excluded from the Debtor's operations.

24. In addition to "for cause," the Court can appoint a trustee under § 1104 of the Bankruptcy Code if it determines that appointment of a trustee is in the best interest of the creditors and the estate. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) (appointing a trustee under § 1104(a)(1) and (2) where mismanagement by debtor's principals caused operating losses and siphoned money from the debtor's estate). While a trustee would be an additional expense on the Debtor's bankruptcy estate, the creditors have not been paid, the amounts owing to

the Bank have increased, and the conduct of the Debtors' prior management directly resulted in additional liens being filed against the Collateral.

25. The Debtor's estate would benefit from the appointment of an impartial trustee who could dutifully pursue its owners and former management for the damage they caused to the Hospital and the Collateral. The Bankruptcy Case should be used to benefit the creditors and remove Debtor's former management once and for all from management. For these reasons, an appointment of a trustee in this Bankruptcy Case is in the best interest of creditors and the estate and should be granted under § 1104(a)(2) of the Bankruptcy Code.

26. In the Bankruptcy Case, a trustee would do the following:

- hire Cohesive to continue its management of the Hospital;
- determine where the Debtor's money has gone;
- determine what funds are needed to run the Hospital; and
- market and sell the Hospital is a going concern for the benefit of the Hillsboro community.

27. The Bank recognizes that there may be operating shortfalls. To that end, the trustee and the management company can determine what those shortfalls are and the Bank can then make a business decision about funding.

28. Most importantly, as set forth above, the Debtor has consented to the appointment of a trustee so Cohesive is able to focus on what it does best: operate and manage the Hospital at an extremely successful level. The trustee can then focus on the other aspects of the Bankruptcy Case, including pursuing causes of action and marketing the Collateral for sale.

29. The Bank requests that the Court appoint Darcy Williamson as the trustee, who is a chapter 7 panel trustee in this District and, to the Bank's knowledge, is a disinterested person who

8

151465514.1

Case 19-10359   Doc# 13   Filed 03/14/19   Page 8 of 9

represents no interest adverse to the Debtor or its estate.

WHEREFORE, the Bank of Hays respectfully requests that the Court enter an order appointing a trustee pursuant to § 1104 of the Bankruptcy Code.

Respectfully submitted,

STINSON LEONARD STREET LLP


By: __/s/ Nicholas J. Zluticky_____
Nicholas J. Zluticky KS # 23935
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
nicholas.zluticky@stinson.com

ATTORNEYS FOR THE BANK OF HAYS


**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served this 14th day of March 2019, by electronic notice on those parties having entered their appearance under the Electronic Filing System (ECF), and a copy of the foregoing was mailed to all parties identified by the ECF system as not receiving electronic notice.

/s/ Nicholas J. Zluticky_____
Nicholas J. Zluticky

9
151465514.1

Case 19-10359   Doc# 13   Filed 03/14/19   Page 9 of 9