UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS AT KANSAS CITY

| | |
|---|---|
| In re: ) | |
| ) | |
| CAH ACQUISITION COMPANY #5, LLC, ) | Case Number 19-10359 |
| d/b/a HILLSBORO COMMUNITY HOSPITAL, ) | Chapter 11 |
| ) | |
| Debtor. ) | |

## MOTION TO APPROVE AGREED ORDER REGARDING USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

COMES NOW Brent King, not individually, but solely in his capacity as the Chapter 11 Trustee in the above-captioned bankruptcy case (the "Trustee"), and for his Motion to Approve Agreed Order Regarding Use of Cash Collateral and Adequate Protection, states as follows:

1. On March 13, 2019 (the "Commencement Date"), Cohesive Healthcare Management + Consulting, LLC ("Cohesive"), as court-appointed receiver for CAH Acquisition Company #5, LLC (the "Debtor"), filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

2. On March 26, 2019, the Trustee was appointed the chapter 11 trustee in the Bankruptcy Case.

3. As of the Commencement Date, Bank of Hays (the "Bank") asserts that the Debtor was indebted to the Bank in the following amounts: $9,663,421.19 in the principal, $302,801.91 in accrued interest, $125.00 in late fees, totaling $9,966.348.10, plus protective advances made from and after January 7, 2019, plus interest from and after the Commencement Date at the per diem rate of $1,879.00, plus all costs, expenses and attorneys' fees (the "Indebtedness").

4. As security for payment of the Indebtedness, the Bank asserts that the Debtor granted the Bank valid and perfected, first priority security interest in and lien on all right, title and interest of the Debtor in all real property and personal property assets (the "Collateral") and the rents, revenues, profits and proceeds therefrom (the "Cash Collateral").

5. The Trustee and the Bank agree that the Cash Collateral the Debtor receives in its operations from all sources, including the use and sale of the Collateral constitutes cash in which the Bank has an interest pursuant to § 363 of the Bankruptcy Code, and therefore, the Trustee must obtain the Bank's consent or a court order to use the Cash Collateral.

6. The Trustee also believes the Debtor has an obligation to provide adequate protection to the Bank for the use of the Collateral and the Cash Collateral pursuant to §§ 361 and 363 of the Bankruptcy Code.

Based on the foregoing, and subject to the Court's approval, the Trustee and the Bank agree as follows:

7. **Deposit of Post Petition Funds and Bank Account Structure.** All cash in the Trustee's possession, under its control, or received by it hereafter, including the Cash Collateral, shall be deposited immediately in the Trustee's bank accounts maintained at the Bank, at US Bank, or the savings account at Hillsboro State Bank (the "Cash Collateral Accounts"). The Trustee shall maintain no other bank accounts except the Cash Collateral Accounts without the written consent of the Bank or an order of the Court obtained upon notice to the Bank and an opportunity for a hearing. The Bank shall maintain a valid and perfected first priority lien on and security interest in the Cash Collateral Accounts and the funds deposited therein.

8. **Expenditure of Cash.** The Trustee may spend Cash Collateral only for the purposes and in the amounts set forth in the budget attached hereto as **Exhibit A** ("the Budget"). The

Budget shall reflect anticipated receipts and expenses for each month in which the Budget is in effect. The Trustee shall not, during any particular month, exceed the budgeted amount for any particular line item of operating expenses by more than ten percent (10%), or the aggregate budgeted amount of operating expenses for any particular month by more than ten percent (10%), without prior written approval of the Bank, or as otherwise authorized pursuant to a separate order of the Court; provided, however, that budgeted expenses that are not paid during the month budgeted may be paid in the next subsequent month. The Trustee agrees that the Bank hereby shall retain a security interest in and lien on all Cash Collateral. All cash not spent on the line items set forth in the Budget shall remain in the Cash Collateral Accounts subject to the terms of this Motion and the order entered in regard to this Motion.

9. **Adequate Protection - Replacement Liens For the Bank.** As adequate protection for the post-petition use of Cash Collateral and the Collateral as set forth herein, the Trustee agrees that the Bank shall hold a valid and duly perfected first priority security interest in and lien on and against all property of the Debtor and of the estate wherever located and any proceeds therefrom, whether presently owned or hereafter acquired. Such adequate protection shall secure the diminution in the value, if any, of the Collateral in which the Bank has a valid and perfected lien and security interest as of the Commencement Date, that may occur during the Bankruptcy Case, and the use of Cash Collateral.

10. **Adequate Protection - Payments to the Bank.** As additional adequate protection of the Bank's interest, and the use of the Collateral and the Cash Collateral, and the resulting diminishment in value of such Collateral, the following payments shall be made to the Bank:

    a. The payments set forth in the Budget; plus

    b. The Trustee agrees that the amounts paid to the Bank under this order entered

in regard to this Motion may be applied by the Bank to its claim in its sole discretion.

11. **Adequate Protection – Management/Maintenance/Insurance/Security/ Leasing**.

a. The Trustee shall in all respects maintain, and cause the maintenance of, the Collateral. The Trustee shall permit the Bank (and its agents) to have access at reasonable times to inspect the Collateral, its condition, and to monitor compliance with the maintenance requirements of the order entered in regard to this Motion.

b. The Trustee shall carry insurance in form and amounts as required by the Loan Documents, noting the Bank as mortgagee and loss payee and shall provide the Bank immediate evidence of such insurance.

c. The operations of the Hillsboro Community Hospital (the "Hospital") will be managed by Cohesive Healthcare Management + Consulting, LLC ("Cohesive"), who shall be entitled to the management fee set forth in the Budget subject to final approval of the Bank. Cohesive shall not increase this fee without further order of the Court upon notice to the Bank and an opportunity for a hearing.

d. The Trustee shall not enter into any new contracts having a length of more than 90 days without either the written consent of the Bank or order of the Court upon notice to the Bank and an opportunity for a hearing.

e. The Trustee shall cause the Hospital to comply with all government rules and regulations, including but not limited to the rules and regulations set forth the Center for Medicare and Medicaid Services and the Kansas Department of Health and Environment.

f. Any costs for the expenditures set forth in this paragraph (including leasing commissions) that are not reflected in the Budget shall not be paid without the written approval of the Bank, or a Court order, on motion, notice, and an opportunity for a hearing.

12. **Adequate Protection – Taxes.** The Trustee shall timely pay all taxes when due.

13. **Adequate Protection – Reservation of Rights.** Entry of an order granting this Motion (and the Bank's agreement to the Budget) shall in no way serve to waive the Bank's right to seek, or the Trustee's obligation to provide, additional adequate protection under the provisions of §§ 361 and 363 of the Bankruptcy Code (including for the diminution in value of the Collateral in excess of the adequate protection provided herein). Nothing contained herein shall be construed as the Bank's agreement or concession that the adequate protection provided herein is sufficient to protect the Bank as required by the applicable provisions of the Bankruptcy Code. The Bank's rights are expressly reserved.

14. **Reports.** On the fifteenth day of each month, the Trustee shall provide to the Bank a report showing, for the prior month, the following: (a) a summary of all checks written and other funds expended including from the Cash Collateral Accounts; (b) a list of checks that were written but had not cleared; (c) all receipts; (d) all operational activities; (e) compliance with all maintenance, management, and regulatory requirements of this Order; and (f) a reconciliation of budgeted to actual expenses for the previous calendar month (collectively the "Reports"). The Reports shall be in a form reasonably satisfactory to the Bank and to the extent that the information contained in the Reports are also contained in the Trustee's monthly operating reports, the Trustee may deliver the monthly operating reports to the Bank in lieu of the above Reports. In addition, the Trustee and his agents shall promptly advise the Bank of all efforts to sell any portion of the Bank's Collateral, including the terms of discussion, drafts of purchase agreements, and status of negotiations.

15. **Access to Records and Examination.** At reasonable intervals and upon reasonable request by the Bank, the Trustee hereby grants the Bank and its representatives reasonable access

to any and all non-privileged information in the Trustee's possession or control regarding the operation of the Hospital including, without limitation, the books, records, operations and assets. In addition, upon reasonable request by the Bank, the Trustee shall make one or more representatives available for examinations regarding the Budget, and any aspect of this Bankruptcy Case under Fed. R. Bankr. P. 2004 without further order of the Court.

16. **Court Approval.** The Trustee shall immediately obtain approval of an order in regard to this Motion on a 15-day interim basis pursuant to the requirements of Fed. R. Bankr. P. 4001 in a form satisfactory to the Trustee and the Bank. Thereafter, the Trustee shall notify parties in interest in this case that the order will become, and shall be deemed to be, a final order effective for the balance of the term of the order all pursuant to Fed. R. Bankr. P. 4001 unless an objection to the entry of the order is timely filed. A copy of the proposed order granting the Motion is attached hereto, incorporated herein, and identified as **Exhibit B**.

17. **Term and Termination of the Order.**

    a. Notwithstanding that Exhibit A hereto reflects a budget for 13 weeks, the order on this Motion shall continue in effect until the earlier of August 1, 2019, and the breach of any provision contained herein by the Debtor.

    b. Upon a breach of any provision contained in the order granting this Motion by the Trustee, the order shall be deemed terminated, the Trustee's right to use Cash Collateral shall immediately cease, and the Bank shall be permitted to obtain an emergency hearing and seek relief from the automatic stay of § 362 of the Bankruptcy Code to enforce its rights and remedies in the Collateral (the "Emergency Hearing").

    c. In addition, the order on this Motion will terminate upon further order of the Court (including an order granting the Bank relief from the automatic stay).

6
Case 19-10359   Doc# 83   Filed 05/09/19   Page 6 of 17

18. **Modification of the Order.** Any modification of the order granting this Motion shall be made only upon prior written consent of the Bank and the Trustee or as otherwise modified pursuant to a separate order of the Court.

19. **Reservation of Rights.** Nothing contained herein shall be construed as a waiver of any rights or remedies that any party hereto has under any documents, the Bankruptcy Code, or applicable law, including the Bank's right at any time to seek relief from the automatic stay of § 362 of the Bankruptcy Code with respect to all or any of the Collateral and either of the parties' right to seek modification of the order granting this Motion and the cash used in accordance with any order entered in regard to this Motion.

WHEREFORE, the Trustee requests the Court enter an order granting the requested relief and granting such other and further relief as is just and equitable.

Respectfully Submitted,

**STEVENS & BRAND, LLP**


By: *s/ Patricia E. Hamilton*
PATRICIA E. HAMILTON, #13263
WESLEY F. SMITH, #18517
917 S.W. Topeka Boulevard
Topeka, Kansas 66612
Telephone ~ (785) 408-8000
Facsimile ~ (785) 408-8003
E-Mail ~ WSmith@StevensBrand.com
E Mail ~ PHamilton@StevensBrand.com
**Counsel for Chapter 11 Trustee Brent King**

## Consolidated Cash Flow
7-May-19

| Week Beginning | 4/29/2019 | 5/6/2019 | 5/13/2019 | 5/20/2019 | 5/27/2019 | 6/3/2019 | 6/10/2019 | 6/17/2019 | 6/24/2019 | 7/1/2019 | 7/8/2019 | 7/15/2019 | 7/22/2019 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash - Beginning of Period** | 271,520 | 208,061 | 57,172 | 68,203 | 28,166 | 144,632 | 24,736 | 9,703 | 10,765 | 126,231 | 23,490 | 16,885 | 13,347 | 271,520 |
| **Revenue** | | | | | | | | | | | | | | |
| Medicare Inpatient Acute | - | 4,965 | 4,965 | 4,965 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 97,351 |
| Medicare Swing-Bed | - | 24,969 | 24,969 | 24,969 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 374,535 |
| Medicare Outpatient | - | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 734,694 |
| All Other Payers | 55,000 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 1,149,374 |
| Legacy (Old AR) ** | - | 149,576 | 149,576 | 149,576 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 673,690 |
| **Total Revenue** | 55,000 | 331,932 | 331,932 | 331,932 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 3,029,644 |
| **Deductions from Revenue** | | | | | | | | | | | | | | |
| Medicare Contractual Adjustment | - | 5,851 | 5,851 | 5,851 | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (73,073) |
| Medicaid Contractual Adjustment | 9,669 | 38,352 | 38,352 | 38,352 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 291,019 |
| Commercial Contractual Adjustment | 23,100 | 96,169 | 96,169 | 96,169 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 784,490 |
| Provision for Bad Debt | 3,032 | 12,034 | 12,034 | 12,034 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 91,318 |
| Medicare ERP (Payment Plan) | - | 33,111 | - | - | - | 33,111 | - | - | - | 33,111 | - | - | - | 99,333 |
| **Total Deductions** | 35,801 | 185,517 | 152,406 | 152,406 | 66,748 | 99,859 | 66,748 | 66,748 | 66,748 | 99,859 | 66,748 | 66,748 | 66,748 | 1,193,087 |
| **Total Gross Margin** | 19,199 | 146,414 | 179,525 | 179,525 | 153,124 | 120,013 | 153,124 | 153,124 | 153,124 | 120,013 | 153,124 | 153,124 | 153,124 | 1,836,558 |
| **Operating Expenses (cash basis)** | | | | | | | | | | | | | | |
| Payroll Semi-Monthly Gross * | - | 140,000 | - | 150,000 | - | 150,000 | - | 150,000 | - | 150,000 | - | 150,000 | - | 890,000 |
| Payroll Employee Benefits | - | 11,480 | - | 12,300 | - | 12,300 | - | 12,300 | - | 12,300 | - | 12,300 | - | 72,980 |
| Insurance Health BCBS Employees | - | 20,000 | - | - | - | 20,000 | - | - | - | - | 20,000 | - | - | 60,000 |
| Insurance General & Work Comp C.N.A. | 2,584 | 1,895 | - | 3,787 | 2,584 | 1,895 | - | 3,787 | 2,584 | 1,895 | - | 3,787 | 2,584 | 27,381 |
| Utilities Gas & electric | - | 8,363 | 4,750 | - | - | 8,363 | 4,750 | - | - | 8,363 | 4,750 | - | 8,363 | 47,703 |
| Telephone, Internet, Cable | - | 508 | 430 | 10,399 | - | 508 | 430 | 10,399 | - | 508 | 430 | - | 508 | 24,122 |
| Purchased Services | 1,122 | 17,966 | 1,122 | 6,524 | 1,122 | 17,966 | 1,122 | 6,524 | 1,122 | 17,966 | 1,122 | 6,524 | 6,524 | 86,724 |
| Physician Fees (Free State) * | - | - | - | - | - | - | 23,308 | - | - | - | 23,308 | - | - | 46,615 |
| Supplies | 19,325 | 17,395 | 14,325 | 17,411 | 19,325 | 17,395 | 14,325 | 16,830 | 19,906 | 17,395 | 14,325 | 16,830 | 16,830 | 221,617 |
| Office Supplies | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 4,875 |
| Postage & Delivery | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| Real Estate Taxes Currently | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| HERC Equipment Leases | - | 9,835 | - | - | - | 9,835 | - | - | - | 9,835 | - | - | - | 29,505 |
| Ice Masters - Ice Machine | - | - | 380 | - | - | - | 380 | - | - | - | 380 | - | - | 1,141 |
| Beckman Coulter Lease (Lab) | - | 2,271 | - | - | - | 2,271 | - | - | - | 2,271 | - | - | - | 6,812 |
| Rent | - | - | - | 920 | - | - | - | - | - | 920 | - | - | 920 | 2,760 |
| Underground Vaults & Storage | - | - | 2,000 | - | - | - | - | - | - | - | - | - | - | 2,000 |
| Subscriptions and Licenses | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Contract Labor | 6,002 | 9,596 | 6,002 | 9,596 | 6,002 | 11,066 | 6,002 | 9,596 | 6,002 | 9,596 | 9,596 | 9,596 | 6,002 | 104,654 |
| Athena Software | - | - | 6,162 | - | - | - | 17,189 | - | - | - | 15,122 | - | - | 38,474 |
| C-Arm (Lease) | - | - | 3,750 | - | - | - | 3,750 | - | - | - | 3,750 | - | - | 11,250 |
| IV Pumps - Finance Agreement | - | - | 2,667 | - | - | - | 2,667 | - | - | - | 2,667 | - | - | 8,001 |
| Dishwasher | - | 370 | - | - | - | 185 | - | - | - | - | 185 | - | - | 740 |
| Telemedicine Cart | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Copiers - Purchase | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Orchard | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Computers (5) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Minor Equipment | - | - | - | 5,000 | - | - | - | - | - | - | - | - | - | 5,000 |
| Contingency | 3,500 | 3,500 | 3,000 | 3,000 | 2,500 | 2,500 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 32,000 |
| McKesson | 4,500 | - | - | - | 4,500 | - | - | - | 4,500 | - | - | - | 4,500 | 18,000 |
| **Total Operating Expenses** | 37,657 | 243,804 | 45,214 | 219,562 | 36,657 | 254,909 | 76,548 | 212,061 | 37,658 | 232,754 | 98,260 | 201,662 | 48,856 | 1,745,603 |
| **Net Operating Cash Flow** | (18,459) | (97,390) | 134,312 | (40,037) | 116,467 | (134,896) | 76,576 | (58,937) | 115,466 | (112,741) | 54,864 | (48,538) | 104,268 | 90,954 |
| **Restructuring Income & Expenses** | | | | | | | | | | | | | | |
| Bank of Hays Loans (negative) | - | - | - | - | - | (50,000) | (40,000) | (60,000) | - | (45,000) | (75,000) | (45,000) | - | (315,000) |
| Ch11 Trustee Fees | - | 40,000 | - | - | - | 30,000 | - | - | - | 30,000 | - | - | - | 100,000 |
| Patient Care Ombudsman | - | 10,000 | - | - | - | 5,000 | - | - | - | 5,000 | - | - | - | 20,000 |
| Cohseive Fixed Monthly Fee | 45,000 | - | 40,000 | - | - | - | 85,000 | - | - | - | 85,000 | - | 40,000 | 295,000 |
| Cohesive Percent Of Revenue Fee | - | - | 8,281 | - | - | - | 31,609 | - | - | - | 28,969 | - | 22,969 | 91,828 |
| Stevens & Brand, LLP | - | - | 50,000 | - | - | - | 15,000 | - | - | - | 15,000 | - | 10,000 | 90,000 |
| GlassRatner IB | - | - | 25,000 | - | - | - | - | - | - | - | - | - | - | 25,000 |
| US Trustee Fees | - | 3,500 | - | - | - | - | - | - | - | - | 7,500 | - | - | 11,000 |
| **Total Restructuring Income & Expense** | 45,000 | 53,500 | 123,281 | - | - | (15,000) | 91,609 | (60,000) | - | (10,000) | 61,469 | (45,000) | 72,969 | 317,828 |
| **Cash - end of period** | 208,061 | 57,172 | 68,203 | 28,166 | 144,632 | 24,736 | 9,703 | 10,765 | 126,231 | 23,490 | 16,885 | 13,347 | 44,646 | 44,646 |

\* Includes Physician Wages
\** Estimated collection of Aged AR = 30%


EXHIBIT A

Case 19-10359   Doc# 83   Filed 05/09/19   Page 8 of 17

Page 1

Hillsboro Cash Flow Model 5-2-19 BK V1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS AT KANSAS CITY

In re:                                              )
                                                    )
CAH ACQUISITION COMPANY #5, LLC,                    )        Case Number 19-10359
d/b/a HILLSBORO COMMUNITY HOSPITAL,                 )        Chapter 11
                                                    )
          Debtor.                                   )

## AGREED ORDER REGARDING USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

This Agreed Order (the "Order") is entered into by and between Brent King, not individually, but solely in his capacity as the Chapter 11 Trustee in the above-captioned bankruptcy case (the "Trustee") and Bank of Hays (the "Bank") with reference to the following:

1. On March 13, 2019 (the "Commencement Date"), Cohesive Healthcare Management + Consulting, LLC ("Cohesive"), as court-appointed receiver for CAH Acquisition Company #5, LLC (the "Debtor"), filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case").



2. On March 26, 2019, the Trustee was appointed the Chapter 11 Trustee in the Bankruptcy Case.

3. As of the Commencement Date, the Bank asserts that the Debtor was indebted to the Bank in the following amounts: $9,663,421.19 in the principal, $302,801.91 in accrued interest, $125.00 in late fees, totaling $9,966.348.10, plus protective advances made from and after January 7, 2019, plus interest from and after the Commencement Date at the per diem rate of $1,879.00, plus all costs, expenses and attorneys' fees (the "Indebtedness").

4. As security for payment of the Indebtedness, the Bank asserts that the Debtor granted the Bank valid and perfected, first priority security interest in and lien on all right, title and interest of the Debtor in all real property and personal property assets (the "Collateral") and the rents, revenues, profits and proceeds therefrom (the "Cash Collateral").

5. The Trustee and the Bank agree that the Cash Collateral the Debtor receives in its operations from all sources, including the use and sale of the Collateral constitutes cash in which the Bank has an interest pursuant to § 363 of the Bankruptcy Code, and therefore, the Trustee must obtain the Bank's consent or a court order to use the Cash Collateral.

6. The Trustee also believes the Debtor has an obligation to provide adequate protection to the Bank for the use of the Collateral and the Cash Collateral pursuant to §§ 361 and 363 of the Bankruptcy Code.

Based on the foregoing, and intending to be legally bound, the parties hereto do hereby agree, and the Court ORDERS as follows:

7. **Deposit of Post Petition Funds and Bank Account Structure.** All cash in the Trustee's possession, under its control, or received by it hereafter, including the Cash Collateral, shall be deposited immediately in the Trustee's bank accounts maintained at the Bank, at US

Bank, or the savings account at Hillsboro State Bank (the "Cash Collateral Accounts"). The Trustee shall maintain no other bank accounts except the Cash Collateral Accounts without the written consent of the Bank or an order of the Court obtained upon notice to the Bank and an opportunity for a hearing. The Bank shall maintain a valid and perfected first priority lien on and security interest in the Cash Collateral Accounts and the funds deposited therein.

8. **Expenditure of Cash.** The Trustee may spend Cash Collateral only for the purposes and in the amounts set forth in the budget attached hereto as **Exhibit A** ("the Budget") and pursuant to the terms of this Order. The Budget shall reflect anticipated receipts and expenses for each month in which the Budget is in effect. The Trustee shall not, during any particular month, exceed the budgeted amount for any particular line item of operating expenses by more than ten percent (10%), or the aggregate budgeted amount of operating expenses for any particular month by more than ten percent (10%), without prior written approval of the Bank, or as otherwise authorized pursuant to a separate order of the Court; provided, however, that budgeted expenses that are not paid during the month budgeted may be paid in the next subsequent month. The Bank hereby shall retain a security interest in and lien on all Cash Collateral. All cash not spent on the line items set forth in the Budget shall remain in the Cash Collateral Accounts subject to the terms of this Order.

9. **Adequate Protection - Replacement Liens For the Bank.** As adequate protection for the post-petition use of Cash Collateral and the Collateral as set forth herein, the Court hereby grants, ratifies and confirms the grant to the Bank of a valid and duly perfected first priority security interest in and lien on and against all property of the Debtor and of the estate wherever located and any proceeds therefrom, whether presently owned or hereafter acquired. Such adequate protection shall secure the diminution in the value, if any, of the Collateral in

3

which the Bank has a valid and perfected lien and security interest as of the Commencement Date, that may occur during the Bankruptcy Case, and the use of Cash Collateral.

10. **Adequate Protection - Payments to the Bank.** As additional adequate protection of the Bank's interest, and the use of the Collateral and the Cash Collateral, and the resulting diminishment in value of such Collateral, the following payments shall be made to the Bank:

a. The payments set forth in the Budget; plus

b. Amounts paid to the Bank under this Order shall be applied by the Bank to its claim in its sole discretion.

11. **Adequate Protection – Management/Maintenance/Insurance/Security/ Leasing.**

a. The Trustee shall in all respects maintain, and cause the maintenance of, the Collateral. The Trustee shall permit the Bank (and its agents) to have access at reasonable times to inspect the Collateral, its condition, and to monitor compliance with the maintenance requirements of this Order.

b. The Trustee shall carry insurance in form and amounts as required by the Loan Documents, noting the Bank as mortgagee and loss payee and shall provide the Bank immediate evidence of such insurance.

c. The operations of the Hillsboro Community Hospital (the "Hospital") will be managed by Cohesive Healthcare Management + Consulting, LLC ("Cohesive"), who shall be entitled to the management fee set forth in the Budget subject to final approval of the Bank. Cohesive shall not increase this fee without further order of the Court upon notice to the Bank and an opportunity for a hearing.

d. The Trustee shall not enter into any new contracts having a length of more than 90 days without either the written consent of the Bank or order of the Court upon notice to

4

the Bank and an opportunity for a hearing.

e. The Trustee shall cause the Hospital to comply with all government rules and regulations, including but not limited to the rules and regulations set forth the Center for Medicare and Medicaid Services and the Kansas Department of Health and Environment.

f. Any costs for the expenditures set forth in this paragraph (including leasing commissions) that are not reflected in the Budget shall not be paid without the written approval of the Bank, or a Court order, on motion, notice, and an opportunity for a hearing.

12. **Adequate Protection – Taxes.** The Trustee shall timely pay all taxes when due.

13. **Adequate Protection – Reservation of Rights.** This Order (and the Bank's agreement to the Budget) shall in no way serve to waive the Bank's right to seek, or the Trustee's obligation to provide, additional adequate protection under the provisions of §§ 361 and 363 of the Bankruptcy Code (including for the diminution in value of the Collateral in excess of the adequate protection provided herein). Nothing contained herein shall be construed as the Bank's agreement or concession that the adequate protection provided herein is sufficient to protect the Bank as required by the applicable provisions of the Bankruptcy Code. The Bank's rights are expressly reserved.

14. **Reports.** On the fifteenth day of each month, the Trustee shall provide to the Bank a report showing, for the prior month, the following: (a) a summary of all checks written and other funds expended including from the Cash Collateral Accounts; (b) a list of checks that were written but had not cleared; (c) all receipts; (d) all operational activities; (e) compliance with all maintenance, management, and regulatory requirements of this Order; and (f) a reconciliation of budgeted to actual expenses for the previous calendar month (collectively the "Reports"). The Reports shall be in a form reasonably satisfactory to the Bank and to the extent that the

information contained in the Reports are also contained in the Trustee's monthly operating reports, the Trustee may deliver the monthly operating reports to the Bank in lieu of the above Reports. In addition, the Trustee and his agents shall promptly advise the Bank of all efforts to sell any portion of the Bank's Collateral, including the terms of discussion, drafts of purchase agreements, and status of negotiations.

15. **Access to Records and Examination.** At reasonable intervals and upon reasonable request by the Bank, the Trustee hereby grants the Bank and its representatives reasonable access to any and all non-privileged information in the Trustee's possession or control regarding the operation of the Hospital including, without limitation, the books, records, operations and assets. In addition, upon reasonable request by the Bank, the Trustee shall make one or more representatives available for examinations regarding the Budget, and any aspect of this Bankruptcy Case under Fed. R. Bankr. P. 2004 without further order of the Court.

16. **Court Approval.** The Trustee shall immediately obtain approval of this Order on a 15-day interim basis pursuant to the requirements of Fed. R. Bankr. P. 4001 in a form satisfactory to the Trustee and the Bank. Thereafter, the Trustee shall notify parties in interest in this case that this Order will become, and shall be deemed to be, a final order effective for the balance of the term of this Order all pursuant to Fed. R. Bankr. P. 4001 unless an objection to the entry of the Order is timely filed.

17. **Term and Termination of this Order.**

    a. Notwithstanding that Exhibit A hereto reflects a budget for 13 weeks, this Order shall continue in effect until the earlier of August 1, 2019, and the breach of any provision contained herein by the Debtor.

    b. Upon a breach of any provision contained in this Order by the Trustee, this

6

Case 19-10359    Doc# 83    Filed 05/09/19    Page 14 of 17

Order shall be deemed terminated, the Trustee's right to use Cash Collateral shall immediately cease, and the Bank shall be permitted to obtain an emergency hearing and seek relief from the automatic stay of § 362 of the Bankruptcy Code to enforce its rights and remedies in the Collateral (the "Emergency Hearing").

c. In addition, this Order will terminate upon further order of the Court (including an order granting the Bank relief from the automatic stay).

18. **Modification of this Order.** Any modification of this Order shall be made only upon prior written consent of the Bank and the Trustee or as otherwise modified pursuant to a separate order of the Court.

19. **Reservation of Rights.** Nothing contained herein shall be construed as a waiver of any rights or remedies that any party hereto has under any documents, the Bankruptcy Code, or applicable law, including the Bank's right at any time to seek relief from the automatic stay of § 362 of the Bankruptcy Code with respect to all or any of the Collateral and either of the parties' right to seek modification of this Order and the cash used hereunder.

IN WITNESS WHEREOF, the attorneys for the parties hereto have entered into this Order on behalf of their clients as of the day and year first above written.

# # #

APPROVED BY:

*s/ Patricia E. Hamilton*
Patricia E. Hamilton, KS Bar No. 13263
STEPHENS & BRAND, LLP
917 S.W. Topeka Boulevard
Topeka, Kansas 66612
Telephone: (785) 408-8000
Facsimile: (785) 408-8003
E-Mail: PHamilton@StevensBrand.com
**Counsel for Chapter 11 Trustee Brent King**

APPROVED BY:

   *s/ Nicholas Zluticky*
Nicholas Zluticky
STINSON LEONARD STREET LLP
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone: 816-691-3278
Facsimile: 816-412-9388
E-Mail: nick.zluticky@stinson.com
**Counsel for Bank of Hays**

**Consolidated Cash Flow**
7-May-19

| Week Beginning | 4/29/2019 | 5/6/2019 | 5/13/2019 | 5/20/2019 | 5/27/2019 | 6/3/2019 | 6/10/2019 | 6/17/2019 | 6/24/2019 | 7/1/2019 | 7/8/2019 | 7/15/2019 | 7/22/2019 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash - Beginning of Period** | 271,520 | 208,061 | 57,172 | 68,203 | 28,166 | 144,632 | 24,736 | 9,703 | 10,765 | 126,231 | 23,490 | 16,885 | 13,347 | 271,520 |
| **Revenue** | | | | | | | | | | | | | | |
| Medicare Inpatient Acute | - | 4,965 | 4,965 | 4,965 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 9,162 | 97,351 |
| Medicare Swing-Bed | - | 24,969 | 24,969 | 24,969 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 33,292 | 374,535 |
| Medicare Outpatient | - | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 61,224 | 734,694 |
| All Other Payers | 55,000 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 91,198 | 1,149,374 |
| Legacy (Old AR) ** | - | 149,576 | 149,576 | 149,576 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 24,996 | 673,690 |
| **Total Revenue** | 55,000 | 331,932 | 331,932 | 331,932 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 219,872 | 3,029,644 |
| **Deductions from Revenue** | | | | | | | | | | | | | | |
| Medicare Contractual Adjustment | - | 5,851 | 5,851 | 5,851 | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (10,070) | (73,073) |
| Medicaid Contractual Adjustment | 9,669 | 38,352 | 38,352 | 38,352 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 18,477 | 291,019 |
| Commercial Contractual Adjustment | 23,100 | 96,169 | 96,169 | 96,169 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 52,543 | 784,490 |
| Provision for Bad Debt | 3,032 | 12,034 | 12,034 | 12,034 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 5,798 | 91,318 |
| Medicare ERP (Payment Plan) | - | 33,111 | - | - | - | 33,111 | - | - | - | 33,111 | - | - | - | 99,333 |
| **Total Deductions** | 35,801 | 185,517 | 152,406 | 152,406 | 66,748 | 99,859 | 66,748 | 66,748 | 66,748 | 99,859 | 66,748 | 66,748 | 66,748 | 1,193,087 |
| **Total Gross Margin** | 19,199 | 146,414 | 179,525 | 179,525 | 153,124 | 120,013 | 153,124 | 153,124 | 153,124 | 120,013 | 153,124 | 153,124 | 153,124 | 1,836,558 |
| **Operating Expenses (cash basis)** | | | | | | | | | | | | | | |
| Payroll Semi-Monthly Gross * | - | 140,000 | - | 150,000 | - | 150,000 | - | 150,000 | - | 150,000 | - | 150,000 | - | 890,000 |
| Payroll Employee Benefits | - | 11,480 | - | 12,300 | - | 12,300 | - | 12,300 | - | 12,300 | - | 12,300 | - | 72,980 |
| Insurance Health BCBS Employees | - | 20,000 | - | - | - | 20,000 | - | - | - | - | 20,000 | - | - | 60,000 |
| Insurance General & Work Comp C.N.A. | 2,584 | 1,895 | - | 3,787 | 2,584 | 1,895 | - | 3,787 | 2,584 | 1,895 | - | 3,787 | 2,584 | 27,381 |
| Utilities Gas & electric | - | 8,363 | 4,750 | - | - | 8,363 | 4,750 | - | - | 8,363 | 4,750 | - | 8,363 | 47,703 |
| Telephone, Internet, Cable | - | 508 | 430 | 10,399 | - | 508 | 430 | 10,399 | - | 508 | 430 | - | 508 | 24,122 |
| Purchased Services | 1,122 | 17,966 | 1,122 | 6,524 | 1,122 | 17,966 | 1,122 | 6,524 | 1,122 | 17,966 | 1,122 | 6,524 | 6,524 | 86,724 |
| Physician Fees (Free State) * | - | - | - | - | - | - | 23,308 | - | - | - | 23,308 | - | - | 46,615 |
| Supplies | 19,325 | 17,395 | 14,325 | 17,411 | 19,325 | 17,395 | 14,325 | 16,830 | 19,906 | 17,395 | 14,325 | 16,830 | 16,830 | 221,617 |
| Office Supplies | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 4,875 |
| Postage & Delivery | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| Real Estate Taxes Currently | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| HERC Equipment Leases | - | 9,835 | - | - | - | 9,835 | - | - | - | 9,835 | - | - | - | 29,505 |
| Ice Masters - Ice Machine | - | - | 380 | - | - | - | 380 | - | - | - | 380 | - | - | 1,141 |
| Beckman Coulter Lease (Lab) | - | 2,271 | - | - | - | 2,271 | - | - | - | 2,271 | - | - | - | 6,812 |
| Rent | - | - | - | 920 | - | - | - | - | - | 920 | - | - | 920 | 2,760 |
| Underground Vaults & Storage | - | - | 2,000 | - | - | - | - | - | - | - | - | - | - | 2,000 |
| Subscriptions and Licenses | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Contract Labor | 6,002 | 9,596 | 6,002 | 9,596 | 6,002 | 11,066 | 6,002 | 9,596 | 6,002 | 9,596 | 9,596 | 9,596 | 6,002 | 104,654 |
| Athena Software | - | - | 6,162 | - | - | - | 17,189 | - | - | - | 15,122 | - | - | 38,474 |
| C-Arm (Lease) | - | - | 3,750 | - | - | - | 3,750 | - | - | - | 3,750 | - | - | 11,250 |
| IV Pumps - Finance Agreement | - | - | 2,667 | - | - | - | 2,667 | - | - | - | 2,667 | - | - | 8,001 |
| Dishwasher | - | 370 | - | - | - | 185 | - | - | - | - | 185 | - | - | 740 |
| Telemedicine Cart | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Copiers - Purchase | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Orchard | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Computers (5) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Minor Equipment | - | - | - | 5,000 | - | - | - | - | - | - | - | - | - | 5,000 |
| Contingency | 3,500 | 3,500 | 3,000 | 3,000 | 2,500 | 2,500 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 32,000 |
| McKesson | 4,500 | - | - | - | 4,500 | - | - | - | 4,500 | - | - | - | 4,500 | 18,000 |
| **Total Operating Expenses** | 37,657 | 243,804 | 45,214 | 219,562 | 36,657 | 254,909 | 76,548 | 212,061 | 37,658 | 232,754 | 98,260 | 201,662 | 48,856 | 1,745,603 |
| **Net Operating Cash Flow** | (18,459) | (97,390) | 134,312 | (40,037) | 116,467 | (134,896) | 76,576 | (58,937) | 115,466 | (112,741) | 54,864 | (48,538) | 104,268 | 90,954 |
| **Restructuring Income & Expenses** | | | | | | | | | | | | | | |
| Bank of Hays Loans (negative) | - | - | - | - | (50,000) | (40,000) | (60,000) | - | (45,000) | (75,000) | (45,000) | - | - | (315,000) |
| Ch11 Trustee Fees | - | 40,000 | - | - | - | 30,000 | - | - | - | 30,000 | - | - | - | 100,000 |
| Patient Care Ombudsman | - | 10,000 | - | - | - | 5,000 | - | - | - | 5,000 | - | - | - | 20,000 |
| Cohseive Fixed Monthly Fee | 45,000 | - | 40,000 | - | - | - | 85,000 | - | - | - | 85,000 | - | 40,000 | 295,000 |
| Cohesive Percent Of Revenue Fee | - | - | 8,281 | - | - | - | 31,609 | - | - | - | 28,969 | - | 22,969 | 91,828 |
| Stevens & Brand, LLP | - | - | 50,000 | - | - | - | 15,000 | - | - | - | 15,000 | - | 10,000 | 90,000 |
| GlassRatner IB | - | - | 25,000 | - | - | - | - | - | - | - | - | - | - | 25,000 |
| US Trustee Fees | - | 3,500 | - | - | - | - | - | - | - | - | 7,500 | - | - | 11,000 |
| **Total Restructuring Income & Expense** | 45,000 | 53,500 | 123,281 | - | - | (15,000) | 91,609 | (60,000) | - | (10,000) | 61,469 | (45,000) | 72,969 | 317,828 |
| **Cash - end of period** | 208,061 | 57,172 | 68,203 | 28,166 | 144,632 | 24,736 | 9,703 | 10,765 | 126,231 | 23,490 | 16,885 | 13,347 | 44,646 | 44,646 |

* Includes Physician Wages
** Estimated collection of Aged AR = 30%


EXHIBIT A

Hillsboro Cash Flow Model 5-2-19 BK V1