**SO ORDERED.**

**SIGNED this 20th day of June, 2019.**



_____
Robert E. Nugent
United States Bankruptcy Judge

---

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS AT KANSAS CITY**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #5, LLC, | ) | Case No. 19-10359 |
| d/b/a HILLSBORO COMMUNITY HOSPITAL, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

**FINAL ORDER (I) AUTHORIZING SECURED
POST-PETITION FINANCING ON A SUPERPRIORITY BASIS PURSUANT TO
11 U.S.C. § 364, (II) AUTHORIZING USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. §§ 363 AND 364, AND (III) GRANTING ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364**

NOW ON THIS 13th day of June, 2019, this matter came before the Court at hearing held

(the "Hearing") to consider the motion (the "Motion") of Brent King, not individually but solely

in his capacity as the Chapter 11 trustee in the above-captioned bankruptcy case (the "Trustee"),

for authority to obtain post-petition financing from Bank of Hays ("Bank"); the Court having

reviewed the Motion, and considered the evidence presented and arguments of counsel; and for

good and sufficient cause appearing therefore, the Court makes the following findings of fact and

conclusions of law:

1

153104924.1

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.    Jurisdiction, Venue and Statutory Predicates

1. On March 13, 2019 (the "Commencement Date"), Cohesive Healthcare Management + Consulting, LLC ("Cohesive"), in its capacity as court-appointed receiver, filed a voluntary petition for CAH Acquisition Company #5, LLC (the "Debtor") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Kansas (the "Bankruptcy Court").

2. On March 26, 2019, the Bankruptcy Court appointed the Trustee as the Chapter 11 trustee for the Debtor pursuant to § 1104(a) of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors has not been appointed in this case as of the date hereof.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5. This Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

6. Venue is proper in this Bankruptcy Court pursuant to 28 U.S.C. § 1408.

7. The statutory predicates for the relief requested in this Motion are sections 105, 363, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Rules") and the local rules of bankruptcy procedure of this Court (the "Local Rules").

### II.    Definitions

8. Capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or those certain loan documents and agreements evidencing or securing the Post-Petition Financing, as hereinafter defined, between the Trustee and the Bank, including without limitation, the Bank Pre-Petition Loan Agreements and the Trustee Loan Agreements (collectively, the "Loan Agreements").

2

9. Additionally, for purposes of this Final Order:

      a. "Adequate Protection Liens" shall refer to any security interests or liens given to a party as adequate protection, pursuant to §§ 361, 362, 363 of the Bankruptcy Code or any other applicable Bankruptcy Code provision, including without limitation, the Replacement Liens.

      b. "Avoidance Actions" shall refer to all of the Estate's claims and causes of actions under §§ 502(d), 542, 544, 545, 547, 558, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code, and any proceeds thereof or property received thereby whether by judgment, settlement, or otherwise.

      c. "Bank" shall mean Bank of Hays.

      d. "Bank Post-Petition Indebtedness" shall collectively refer to the Post-Petition Indebtedness and the Receivership Indebtedness as those terms are defined herein.

      e. "Bank Liens" shall collectively refer to the Bank Pre-Petition Liens and the Bank Post-Petition Liens granted to the Bank in this Final Order, as those terms are defined herein.

      f. "Bank Pre-Petition Liens" shall refer to the liens and security interests provided to the Bank by the Debtor prior to the Commencement Date, including but not limited to all proceeds thereof.

      g. "Bank Post-Petition Liens" shall refer to the liens and security interests being provided to the Bank under this Final Order, including, without limitation, the Post-Petition Loan Collateral, the Primed Collateral and the Replacement Liens, to secure the Bank Post-Petition Indebtedness.

      h. "Collateral" shall collectively refer to the Post-Petition Loan Collateral, the

3

Replacement Collateral granted to the Bank in this Final Order, the Bank Pre-Petition Collateral and Cash Collateral as those terms are defined herein.

i. "Estate" shall refer to the bankruptcy estate of CAH Acquisition Company #5, LLC.

j. "Excluded Post-Petition Collateral" shall refer to the equipment on which U.S. Bancorp Equipment Finance, Inc. or First Financial Corporate Leasing, LLC claim a perfected security interest.

k. "Permitted Liens" shall refer to any deeds of trust, security interests, mortgages, or liens of parties other than the Bank that pursuant to applicable non-bankruptcy law existed and were properly perfected, valid, and enforceable as of the Commencement Date (or become properly perfected after the Commencement Date under Code § 546(b)), and which are non-avoidable under the Code or applicable non-bankruptcy law, but do not include Adequate Protection Liens.

l. "Post-Petition Indebtedness" shall mean all amounts advanced to the Trustee under the Post-Petition Financing, all accrued interest thereon, plus all costs, expenses and attorneys' fees incurred by the Bank in any way related to the Post-Petition Financing and the Bank's enforcement of thereof.

m. "Post-Petition Loan Collateral" shall refer to all pre-petition and post-petition property of the Debtor and the Estate of any nature whatsoever and wherever located, tangible or intangible, whether now or hereafter acquired, whether existing on the Commencement Date or thereafter acquired, including without limitation, the Avoidance Actions (except any that might exist against Bank), any and all cash and Cash Collateral of the Debtor and the Estate and any investment of such cash and Cash Collateral, any goods, inventory or equipment, any accounts

4

receivable, any other right to payment whether arising before or after the Commencement Date, contracts, properties, plants, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries and the proceeds, products, offspring or profits of each of the foregoing.

n. "Primed Collateral" shall refer to all assets of the Debtor and the Estate, including but not limited to the Post-Petition Loan Collateral and the Bank Pre-Petition Collateral; provided, however, that the Primed Collateral shall not include the Excluded Collateral.

o. "Receivership Indebtedness" shall refer to all amounts advanced by the Bank to Cohesive prior to the Commencement Date.

## III.   Notice and Record

10.  Notice of the Hearing and the relief requested in the Motion was provided to: (1) the U.S. Trustee ("UST"); (2) counsel, if known, to the Prepetition Lenders; (3) parties with liens of record on assets of the Debtor as of the Commencement Date; (4) counsel to the Bank; and (5) the Debtor's twenty (20) largest unsecured creditors, as identified in the Debtor's bankruptcy filings.

11.  Adequate and sufficient notice of the Hearing and the relief requested in the Motion, as evidenced by the applicable certificates of service filed with the Court and as stated on the record, have been given in accordance with the provisions of §§ 102(1), 363, 364(c) and (d) of the Bankruptcy Code and Rules 2002, 4001(c), and 4001(d), and the Local Rules. Under the circumstances, no further notice is required.

12.  At the Hearing, the Court considered representations made by counsel, offers of proof, and/or testimony regarding: (1) The negotiations pertaining to this Final Order; (2) the necessity for this Final Order; (3) the events leading up to the filing of the bankruptcy case; (4)

5

the Trustee's need for credit to the extent necessary to avoid immediate and irreparable harm to the Estate; and (5) those expenses necessary to avoid immediate and irreparable harm to the Estate.

13. The Motion contains the necessary findings and disclosures under Rules 4001(c) and (d).

14. No objections to the entry of this Final Order were filed. Health USA, Inc. raised an oral objection to the entry of this Final Order at the Hearing. The Court finds that Health USA, Inc.'s objection was untimely and, to the extent that it was timely, is hereby overruled in its entirety.

## I. Debtor's Background

### A. The Bank Pre-Petition Indebtedness

15. Prior to the Commencement Date, on December 30, 2015, the Debtor executed a Promissory Note in favor of the Bank, evidencing a loan made by the Bank to the Debtor in the original principal amount of $9,710,885.00 (the "Note").

16. To secure the amounts owing under the Note, the Debtor executed a Mortgage in favor of the Bank (the "Mortgage"), granting the Bank a first lien on the real estate located at 101 Industrial Rd., Hillsboro, Kansas 67063 (the "Real Estate").

17. The Mortgage was recorded in the Marion County, Kansas Register of Deeds Office on December 30, 2015, at Book 470 Page 993.

18. To further secure the amounts owing under the Note, the Debtor executed a Security Agreement in favor of the Bank (the "Security Agreement"), granting the Bank a security interest in all personal property assets of the Debtor (the "Personal Property" and together with the Real Estate, the "Collateral"). The Bank perfected its security interest in the Collateral by filing a UCC-1 financing statements with the Delaware Secretary of State (collectively, the "UCC-1's").

6

(The Note, the Mortgage and the Security Agreement, UCC-1's, and all documents related thereto, are collectively referred to hereafter as the "Pre-Petition Loan Documents").

19. The Debtor has failed to make the payment required under the Note since October 2018 and is in default under the Loan Documents.

20. As of January 7, 2019, the Debtor is liable to the Bank under the Loan Documents in the following amounts: $9,663,421.19 in principal, plus interest in the amount of $178,788.00 as of January 7, 2019, plus late fees in the amount of $125.00, totaling $9,842,334.20, plus interest thereafter at the rate of 7.0% per annum until paid in full together with collection costs, costs of title work, costs of publication, attorney fees and any funds advanced pursuant to the terms of the Loan Document, including for unpaid real estate taxes (collectively, the "Bank Pre-Petition Indebtedness").

21. Further, Debtor's cash generated from the Bank Pre-Petition Collateral constitutes proceeds of the Bank Pre-Petition Collateral and, therefore, is cash collateral of the Bank within the meaning of § 363(a) of the Bankruptcy Code ("Cash Collateral").

**B.      Other Pre-Petition Lenders**

22. The Public Building Commission of Hillsboro, Kansas (the "PBC") owns fee title to the land upon which the Hillsboro Hospital was built, and leases that land, as well as an adjoining parking lot, to the City of Hillsboro, Kansas (the "City"). The City subleases the land to the Debtor under the terms of a sublease agreement between the City and the Debtor. The lease payments from the Debtor to the City, and then from the City to the PBC, are used to pay-off bond financing the PBC undertook in 2015 as part of the project to build the Hillsboro Hospital. Security Bank of Kansas City ("Security Bank") is the bond trustee for the bonds described herein. Any interest of Security Bank, the PBC or the City in the Collateral is junior and inferior to the Bank's properly perfected mortgage lien on the real estate and its properly

7

perfected security interest in the personal property of the Debtor.

23. The Kansas Department of Revenue may claim a lien on some or all of the Debtor's assets pursuant to tax warrants 2017-ST-87, 2018-ST-4 and 2018-ST-72 (the "Tax Warrants"). Any interest of the Kansas Department of Revenue in the Collateral by virtue of the Tax Warrants is junior and inferior to the Bank's properly perfected lien on and security interest in the Collateral.

24. App Group International, LLC ("AGI") may claim a security interest in some or all of the Debtor's personal property assets. On information and belief, AGI failed to file a UCC-1 financing statement in the Debtor's state of incorporation; consequently, any security interest AGI may have held was unperfected as of the Commencement Date. Thus, any security interest of AIG is junior and inferior to the Bank's properly perfected security interest and any security interest of AIG is almost certainly avoidable under § 544 of the Bankruptcy Code.

25. U.S. Bancorp Equipment Finance, Inc. may claim a perfected security interest in some of the Debtor's equipment.

26. First Financial Corporate Leasing, LLC may claim a perfected security interest in some of the Debtor's equipment.

27. Health Acquisition Company, LLC, as successor in interest to HMC/CAH Note Acquisition, LLC ("HAC") and as assignor of an alleged security interest granted by the Debtor to Gemino Healthcare Finance, LLC ("Gemino"), may claim a security interest in some or all of the Debtor's personal property assets. On information and belief, HAC's predecessor terminated its UCC-1 financing statement on February 4, 2016, in the Debtor's state of incorporation and Gemino never filed a UCC-1 financing statement in Debtor's state of incorporation. Consequently, any security interest HAC may have held or claim was unperfected on the

8

Commencement Date. Any security interest of HAC is junior and inferior to the Bank's properly perfected security interest and any security interest of HAC is almost certainly avoidable under § 544 of the Bankruptcy Code.

28. GEL Funding, LLC ("GEL") may claim a perfected security interest in Debtor's assets by virtue of a UCC-1 financing statement filed on March 1, 2019. Any security interest of GEL is junior and inferior to the Bank's properly perfected security interest. Moreover, because the financing statement was filed within 90 days of the Commencement Date and after the appointment of Cohesive as receiver for the Debtor, the security interest is avoidable either under § 547(b) of the Bankruptcy Code as a preference or under § 544 of the Bankruptcy Code as unauthorized.

### C. Trustee's Need for Post-Petition Financing

29. The Hospital does not have sufficient available sources of working capital and financing to operate in the ordinary course of business or operate maintain the property in accordance with state and federal law. The access of the Trustee to sufficient working capital and liquidity through the use of Cash Collateral, and incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Hospital.

30. The Bank has indicated a willingness to extend post-petition credit up to an aggregate principal amount not to exceed $650,000 and accrue interest at the rate of 7% per annum subject to the terms and conditions of the Trustee Loan Agreements and this Final Order (the "Post-Petition Financing"). In order to facilitate the Post-Petition Financing and in exchange for the relief and concessions given by the Trustee as set forth herein, the Bank shall receive a senior priming lien on the Primed Collateral securing all the Post-Petition Financing up to $650,000.00, as well as the Receivership Indebtedness up to $1,200,000.00, resulting in a senior

9

153104924.1

priming lien on the Primed Collateral of up to $1,850,000.00.

31. The Trustee believes he is unable to obtain working capital financing allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code. Except for the proposed financing from the Bank described herein, the Trustee is also unable to obtain working capital financing (1) allowable with priority as a superpriority administrative expense under § 364(c)(1) of the Bankruptcy Code; (2) secured by a senior lien on the Debtor's unencumbered assets under § 364(c)(2) of the Bankruptcy Code; or (3) secured by a junior lien on the Debtor's encumbered assets under § 364(c)(3) of the Bankruptcy Code. After considering all alternatives, the Trustee has concluded, in the exercise of his business judgment, that the financing offered by the Bank represents the best working capital financing option. In order to maximize the value of the Estate's assets, the Trustee has an immediate need for the financing set forth in this Final Order.

32. The relief requested in the Motion is necessary, essential, and appropriate for the preservation of the Estate, and is in the best interests of the Estate and the Debtor's creditors. In the absence of the Post-Petition Financing, the Hospital will not be able to continue operations and would cause serious and irreparable harm to the Estate and its creditors.

33. The terms and conditions of the Post-Petition Financing are fair, reasonable, and the best available under the circumstances, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and constitute reasonably equivalent value and fair consideration.

34. Based on the record presented to the Court by the Trustee at the Preliminary Hearing, the terms of the Post-Petition Financing as set forth in the Motion, this Final Order and the Post-Petition Loan Agreements have been negotiated in good faith and at arm's length between the Trustee and the Bank. The credit to be extended by the Bank pursuant to this Final Order and the

10

Post-Petition Loan Agreements is being extended in good faith as that term is used in § 364(e) of the Bankruptcy Code.

## IV.    Stipulations

35.    The Trustee and the Bank have agreed to the terms of this Order.  Absent the entry of this Final Order, the Bank would not provide the Post-Petition Financing.  In consideration of the Bank providing to the Trustee the Post-Petition Financing, the Trustee, on behalf of the Debtor and the Estate:

a. Stipulates and agrees that the Bank Pre-Petition Indebtedness (a) constitutes the legal, valid, and binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the automatic stay arising under § 362 of the Bankruptcy Code); (b) is now due and owing in its entirety, without any defense, off-set, recoupment, claim, counterclaim, or deduction of any kind or nature whatsoever; (c) is not subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

b. Stipulates and agrees that the Receivership Indebtedness (a) constitutes the legal, valid, and binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the automatic stay arising under § 362 of the Bankruptcy Code)  (b) is now due and owing in its entirety, without any defense, off-set, recoupment, claim, counterclaim, or deduction of any kind or nature whatsoever; (c) is not subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) is oversecured and entitled to the benefits and privileges of the same pursuant to § 506(b) of the Bankruptcy Code, including, without limitation, that the Receivership Indebtedness will continue to accrue interest at the rate of 7% per annum.

c. Stipulates and agrees that the security interests and liens granted to the Bank by the Debtor prior to the Commencement Date in the Bank Pre-Petition Collateral (collectively,

11

the "Pre-Petition Bank Liens"), including, without limitation, any security interests, or liens granted pre-petition pursuant to any security agreement, pledge agreement, deed of trust, mortgage, or other security document executed by the Debtor in favor of the Bank, are (a) legal, valid, binding, perfected, and enforceable, security interests, and liens; (b) not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (c) subject and subordinate only to any Permitted Liens that, pursuant to applicable law, were in fact senior in priority to the Pre-Petition Bank Liens as of the Commencement Date except as otherwise provided for by this Final Order.

      d.  Release and forever discharge the Bank and its officers, directors, shareholders, representatives, agents, attorneys, advisors, employees, insurers, successors, assigns, affiliates, and subsidiaries (collectively, the "Released Parties"), from any and all debts, liabilities, expenses, obligations, claims, counterclaims, charges, actions, damages, rights of action, and causes of action (including any Chapter 5 causes of action under the Code, any so called "Lender liability" claims or defenses  and claims pursuant to § 506(c) of the Bankruptcy Code), of whatever kind or nature, whether known or unknown, developed or undeveloped, anticipated or unanticipated, which arose on or prior to the date of this Final Order; and

      e.  Waive, as of the Commencement Date, the right to (a) challenge the existence, legality, validity, enforceability, or amount of the Bank Pre-Petition Indebtedness and the Pre-Petition Bank Liens; (b) assert defenses, counterclaims, recoupment or setoffs with respect to the Bank Pre-Petition Indebtedness or Pre-Petition Bank Liens; and (c) seek affirmative relief or bring any claims or causes of action against the Bank, or any of the other Released Parties, including, without limitation, any claims or causes of action under §§ 506(c), 542, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code.

153104924.1

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

36. The Motion is granted, subject to the terms and conditions set forth in this Final Order.

37. <u>Authorization to Obtain Post-Petition Financing</u>. The Trustee is hereby authorized to obtain the Post-Petition Financing and additionally to borrow money and seek other financial accommodations from the Bank after the Commencement Date pursuant to the terms and conditions of this Final Order and the Loan Agreements. The Bank is authorized to advance funds constituting Post-Petition Financing subject to the terms and conditions of this Final Order and the Loan Agreements. The Trustee is authorized to use the proceeds of any loans ("Loans") made under the Post-Petition Financing, strictly as provided for and limited in the Budget for operations of the Hospital and the administration of this bankruptcy case (all such Loans and diminution from use of Cash Collateral and other Collateral (as defined below) collectively shall constitute, the "Post-Petition Indebtedness"), provided, that the proposed Loans are consistent with the terms and conditions of the Loan Agreements and this Final Order and will only be used to pay when due the expenses set forth in the Budget. The Trustee is further authorized to execute all documents reasonably required by the Bank in connection with Post-Petition Financing, including, without limitation, any amendments, modification or change in terms agreements with respect to the same.

38. <u>Loan Agreement Terms Remain in Full Force and Effect</u>. During the term of this Final Order, the terms and conditions of the Loan Agreements shall continue in full force and effect with respect to the Bank Pre-Petition Indebtedness, Loans and other advances under the Post-Petition Financing except as otherwise modified in this Final Order.

39. <u>Superpriority Claim</u>. Pursuant to § 364(b) of the Bankruptcy Code, the Post-Petition Indebtedness shall constitute an allowed administrative expense of the Estate under § 503(b)(1)

13

of the Bankruptcy Code. In accordance with § 364(c)(1) of the Bankruptcy Code, the Post-Petition Indebtedness up to a maximum amount of $650,000.00, and the Receivership Indebtedness up to a maximum amount of $1,200,000.00 shall constitute claims (the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to §§ 503(b)  or 507(b) of the Bankruptcy Code and all administrative expenses under §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, subject only to the Carve Out to the extent specifically provided for herein. No cost or expense of administration under the previously referenced Bankruptcy Code sections shall be senior to, or *pari passu* with, the Superpriority Claims of the Bank arising out of the Post-Petition Indebtedness, subject only to the payment of the Carve-Out to the extent specifically provided for herein.

40. <u>Bank Indebtedness Security</u>.

a. <u>Senior Liens on Unencumbered Property</u>. Pursuant to § 364(c)(2) of the Bankruptcy Code, the Post-Petition Indebtedness and the Receivership Indebtedness shall be secured by a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all Collateral, whether now existing or hereafter acquired and all proceeds thereof, that, on or as of the Commencement Date, is not subject to a valid, perfected and non-avoidable lien in favor of a third party, including, without limitation, the Avoidance Actions.

b. <u>Junior Liens on Encumbered Property</u>. Pursuant to § 364(c)(3) of the Bankruptcy Code, the Post-Petition Indebtedness and the Receivership Indebtedness shall be secured by a valid, binding, continuing, enforceable, fully perfected junior security interest in and lien upon all Collateral, whether now existing or hereafter acquired and all proceeds thereof,

14

that, on or as of the Petition Date, that is subject to a Permitted Lien; provided, however, that to the extent that the Bank Pre-Petition Indebtedness is secured by liens that are senior to the Permitted Liens that such liens will retain their senior and superior status over the Permitted Liens.

c. <u>Priming Liens on Encumbered Property</u>. Pursuant to § 364(d)(1) of the Bankruptcy Code, all of the Post-Petition Indebtedness up to $650,000.00 and the Receivership Indebtedness up to $1,200,000.00 shall be secured by a valid, binding, continuing, enforceable, fully perfected first priority senior priming security interest in and lien upon all Primed Collateral whether now existing or hereafter acquired and all proceeds thereof, and in the proceeds of Post-Petition Collateral secured by Permitted Liens to the extent necessary to secure the repayment of any proceeds of the Post-Petition Financing that are used to satisfy the reasonable and necessary costs and expenses to preserve such collateral to the extent of any direct benefit to any holder of a Permitted Lien.

d. <u>Protection of Priority</u>. The Bank Liens shall not be (i) subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Estate under § 551 of the Bankruptcy Code or (b) any liens arising after the Commencement Date including, without limitation, effective upon entry of this Final Order, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor or the Estate; or (ii) subordinated to or made *pari passu* with any other lien or security interest under §§ 363 or 364 of the Bankruptcy Code or otherwise; including, with limitation, the Adequate Protection Liens.

41. <u>Perfection of Bank Liens.</u>

a. <u>Automatic Perfection</u>. The Bank Liens shall be effective and perfected upon

15

the date of this Final Order without necessity for the execution or recordation of filings of deeds of trust, mortgages, security agreements, control agreements, pledge agreements, financing statements or similar documents, or the possession or control by the Bank of, or over, any Collateral.

b. <u>Authorization to File Perfection Documents</u>. The Bank is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, deeds of trust, mortgages, notices of lien or similar instruments in any jurisdiction, or to take possession of or control over, or take any other action (including taking or releasing any liens or pledges granted by this Final Order) in order to validate and perfect the Bank Liens granted to it hereunder. Whether or not the Bank shall, in its sole discretion, chose to file such financing statements, trademark filings, copyright filings, deeds of trust, mortgages, notices of lien or similar instruments that may be otherwise required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such interests and liens, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, as of entry of this Final Order.

c. <u>Trustee's Cooperation</u>. The failure of Trustee to execute any documentation relating to the enforceability, priority or perfection of the Bank Liens shall in no way affect the validity, perfection or priority of such liens and security interests. If the Bank, in its sole discretion, elects to file any financing statements, trademark filings, copyright filings, deeds of trust, mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the Bank Liens, the Trustee shall cooperate with and assist in such process, the stay imposed under § 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this Final Order or any such financing statements, trademark filings, copyright filings, deeds

16

of trust, mortgages, notice of lien or similar instruments, and all such documents shall be deemed to have been filed and recorded at the time of and on the date of this Final Order. Upon the request of the Bank, without any further consent of any party, the Trustee is authorized to take, execute, deliver and file such documents (in each case without representation and warranty of any kind) to enable the Bank to further validate, perfect, preserve and enforce the Bank Liens.

d. Filing of the Order. A certified copy of this Final Order may, in the discretion of the Bank, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, trademark filings, copyright filings, deeds of trust, mortgages, notice of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for titling and recording.

e. Depository Accounts. All depository institutions where the Debtor, the Estate or the Trustee has one or more depository accounts shall share control with the Bank with respect to each depository account enforceable by the Bank against, and binding upon, each depository institution party thereto until the Bank Indebtedness is paid in full and the Loan Agreements shall have been terminated.

f. Subsequent Liens. If, in the course of this bankruptcy case, and contrary to the provisions in this Final Order, the Bankruptcy Court grants liens or security interests to others pursuant to § 364(d) of the Bankruptcy Code or any other provision of the Bankruptcy Code, which liens or security interests are senior or equal to the liens or security interests of the Bank in the Collateral (collectively, "Subsequent Liens"), then any proceeds of loans or extensions of credit secured by such Subsequent Liens shall be applied first to payment of the Post-Petition Indebtedness, then to the Receivership Indebtedness, and then to the Bank Pre-Petition Indebtedness. The Bank shall retain all liens and security interests held by it on the Collateral

17

until the Post-Petition Indebtedness, the Receivership Indebtedness, and the Bank Pre-Petition Indebtedness is paid in full.

42. <u>Budget</u>.

a. <u>Initial and Proposed Budgets</u>. Attached as Exhibit A to the Interim Order (Doc. 109) is a budget for the period from May 1, 2019, through and including July 28, 2019 (the "<u>Initial Budget</u>"), which has been consented to by the Bank. The Trustee shall file a proposed budget for the week beginning July 29, 2019 (the "Proposed Budget"). Prior to filing the Proposed Budget, the Trustee shall discuss the same with Bank and any statutory committee appointed pursuant to § 1102 of the Bankruptcy Code and shall use best efforts to achieve a consensual budget. Parties in interest will have seven (7) days from the date the Proposed Budget is filed to object to the Proposed Budget. If no timely objections are received, then the Proposed Budget will become the final budget for the time period for which it covers (the "<u>Final Budget</u>," together with the Initial Budget, are hereinafter collectively referred to as the "<u>Budget</u>"). To the extent that an objection is raised, then the Trustee shall immediately arrange a hearing with the Court prior to the end of the period for which there is a Budget in place.

b. <u>Authorization to Pay Budgeted Expenses</u>. The Budget reflects, on a line item basis, anticipated cash receipts and expenditures on a weekly basis and includes all necessary and required expenses that the Trustee expects to incur during each week of the Budget. Without prior approval of the Bankruptcy Court or the express written consent of the Bank, the Trustee shall pay the reasonable amounts which are actual, necessary expenses in the operation of its business not to exceed one hundred and ten percent (110%) of the amount stated on any single Budget line item; provided, however, that in no event shall the total amount expended authorized by this Final Order exceed one hundred and five (105%) of the total amount of expenses stated in

18

the Budget for any given week without prior approval of the Bankruptcy Court or the express written consent of the Bank and notice to any statutory committee appointed under § 1102 of the Bankruptcy Code; further provided that in no event should Cash Collateral be used to pay pre-petition claims or obligations, other secured claims or obligations to insiders, unless specifically authorized by separate order from this Court and to the extent such payment does not exceed the parameters of the Budget.

43. <u>Carve-Out</u>. Any provision of this Final Order or the Loan Agreements to the contrary notwithstanding, the Bank Liens and Superpriority Claims granted to the Bank pursuant to the Loan Agreements and this Final Order shall be subject and subordinate to a carve out (the "<u>Carve-Out</u>") for:

       a. <u>UST and Court Fees</u>. Amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a) and any fees payable to the Clerk of the Bankruptcy Court;

       b. <u>Chapter 11 Trustee Fees and Professional Fees and Expenses</u>. The payment pursuant to Orders of the Bankruptcy Court, in form and substance approved by the Bank, which approval shall not be unreasonably withheld, of allowed unpaid Trustee fees and allowed unpaid professional fees, costs and expenses of the retained attorneys by the Trustee or any committee appointed in this case (collectively, the "<u>Trustee and Professional Fees and Expenses</u>"), only to the extent that such Trustee and Professional Fees and Expenses:

           (i) were incurred or accrued prior to the earlier of (a) the Termination Date or the expiration of the Initial Term, or, if applicable, the Extended Term, or (b) receipt by the Trustee post-petition of notice of an Event of Default;

           (ii) are in accordance with the Budget;

19

(iii) do not exceed the amounts for each respective retained professional during the Initial Budget:

| | |
|---|---|
| Trustee Fees | $95,000 |
| Trustee's Counsel | $95,000 |
| Trustee's Financial Advisor | $25,000 |

Less (A) any unapplied prepetition retainers with respect to each retained professional, (B) the amounts already paid to such professionals in the case, (C) and any unencumbered funds in the Estate and the proceeds of any unencumbered property of the Estate generally available to pay such Trustee and Professional Fees and Expenses. In no event shall any retainers or the Carve Out be used to pay any fees or expenses arising after the conversion of this case to a case under Chapter 7 of the Bankruptcy Code. Nothing herein shall be construed as consent to the allowance of any fees and expenses of a retained professional, or shall affect any party's rights to object to the allowance and payment of such fees and expense, all of such rights being expressly preserved.

(iv) In the event that a statutory committee is appointed under § 1102 of the Bankruptcy Code, such committee shall have the right to apply to the Bankruptcy Court for an increase in the Carve-Out to pay for reasonable attorneys' fees and expenses of counsel for such committee, provided, however, that nothing contained herein shall be deemed a waiver of the Bank's right to object to such request.

c. No Contest Clause. Notwithstanding anything herein to the contrary, no portion of the Post-Petition Financing or the Carve-Out shall be used or available to pay Trustee

20

and Professional Fees and Expenses incurred by any party in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter or adversary proceeding seeking the entry of any order, judgment, or determination (i) challenging the amount, extent, validity, perfection, priority or enforceability of the Bank Liens, Superpriority Claims granted herein to Bank, and the Bank Indebtedness; (ii) invalidating, setting aside, avoiding, subordinating, or otherwise, affecting the Bank's claims and interests in the case; (iii) preventing, hindering or delaying the Bank's assertion or enforcement of the Bank Liens or realization upon any Collateral; (iv) approving either (A) the sale or other disposition of any Collateral which is not permitted under the Loan Agreements, or (B) the incurrence of any indebtedness which is not permitted under the Loan Agreements or under the Budget, in each case, to the extent the Bank has not provided its express written consent; or (v) asserting any other claims or causes of action against the Bank.

44. <u>Application of Payments</u>. Proceeds or payments received by the Bank, or any advances or reserves contemplated herein, shall be applied by the Bank as follows:

a. First, to the payment of Post-Petition Indebtedness including all accrued and accruing interest, costs and expenses, including reasonable attorneys' fees;

b. Second, to the payment of the Receivership Indebtedness; and

c. Third, to the payment of Bank Pre-Petition Indebtedness.

45. <u>Term</u>.

a. <u>Initial Term</u>. The agreement by the Bank to make any Post-Petition Financing available to the Trustee under the Loan Agreements shall continue until and shall include August 1, 2019, or such earlier date as all Bank Indebtedness is paid in full, unless (a) terminated prior to this date upon the occurrence of the Termination Date or (b) otherwise pursuant to the terms of

153104924.1

this Final Order (the "Initial Term"). During the Initial Term, the Trustee is required to pursue potential sale opportunities with respect to the Debtor's Assets. Debtor shall provide a report to the Bank on the 30th day of each month detailing its efforts to secure refinancing or sale opportunities.

b. Extension of Term. The Initial Term may be extended only upon written agreement of the Bank and the Trustee and notice to any statutory committee appointed pursuant to § 1102 of the Bankruptcy Code, in which case the Initial Term shall be extended without further order of the Bankruptcy Court. In the event that the Bank and the Trustee agree in writing to extend the Initial Term, the terms and conditions of this Final Order, the Loan Agreements, and all documents and orders related thereto, shall continue to govern the Post-Petition Financing through such extended term. In addition, in the event that the Bank and the Trustee agree in writing to extend the Initial Term, the Trustee shall file a notice with the Bankruptcy Court of the extended term.

c. Termination of Post-Petition Financing and Use of Cash Collateral. If a Default or an Event of Default as defined in the Loan Agreements, or in this Final Order (other than those Defaults or Events of Default excepted in this Final Order) occurs, the Bank shall have the right to immediately suspend funding under the Post-Petition Financing after the Bank provides forty-eight (48) hours (the "Notice Period") prior written notice to the Trustee and any statutory committee appointed under § 1102 of the Bankruptcy Code ("Default Notice"), and the Bank may terminate the Post-Petition Financing (the date of any such termination, the "Termination Date") and declare the Loans to be immediately due and payable. Moreover, the automatic stay pursuant to Code § 362(a) shall be deemed lifted and modified, without further order of this Court, to permit the Bank to exercise any and all of its rights and remedies under the

153104924.1

Loan Agreements and this Final Order; provided, however, that the obligations and rights of the Bank and the Trustee with respect to all transactions which have occurred prior to the Termination Date shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided, further, that upon such termination, the Bank shall be deemed to have retained all of its rights and remedies, including, without limitation, as provided in the Loan Agreements and under the Bankruptcy Code and Rules. The Trustee's right to use Cash Collateral shall terminate automatically on the Termination Date. Further, this Final Order is without prejudice to (a) the Bank seeking the early termination of the Post-Petition Financing and Trustee's use of Cash Collateral prior to the expiration of this Final Order for cause, including lack of adequate protection; or (b) Trustee's opposing such early termination.

46. <u>Events of Default</u>. An Event of Default under this Final Order shall include:

a. The entry of an order dismissing this case or converting this case to a case under chapter 7 of the Bankruptcy Code;

b. The entry of an order transferring the venue of this case to any court other than the Bankruptcy Court;

c. The entry of an order granting any other claim a lien equal or superior to the claims and liens granted to the Bank;

d. The entry of an order staying, reversing, vacating or otherwise modifying the Post-Petition Financing under this Final Order without the Bank's prior written consent;

e. The entry of an order in this case appointing an examiner having enlarged powers beyond those set forth under § 1106(a)(3) and (4) of the Bankruptcy Code;

f. An Event of Default or Default under the Loan Agreements (except those defaults which arise on account of the bankruptcy filing and failure to make payments on the

Bank Pre-Petition Indebtedness when due);

g. Any post-petition material representation or material warranty by the Trustee that is incorrect or misleading in any material respect when made;

h. There shall occur a material adverse disruption or change in the operation of the Hospital or a change of control shall occur other than: (i) with the Bank's consent; or (ii) pursuant to a plan of reorganization or liquidation in which the Bank Indebtedness is repaid in full, on the effective date of such plan unless otherwise consented by the Bank in its sole discretion;

i. The entry of any order granting any relief from the automatic stay so as to allow a third party to proceed against any material asset or assets of the Estate, other than relating to assets subject to Permitted Liens which if granted will not materially or adversely affect current operations;

j. The commencement of any actions adverse to the Bank or its rights and remedies under this Final Order or any other Bankruptcy Court order;

k. The entry of an order confirming a plan of reorganization in case unless such order provides for payment in full in cash of all Bank Indebtedness on or before the effective date of the plan of reorganization (which must be no more than 30 days after the a confirmation order) that is the subject of such order, unless otherwise consented by the Bank in its sole discretion;

l. The failure to pay in full the Bank Indebtedness by the last day of the Initial Term, unless otherwise extended the terms of the Final Order;

m. The expenditures of the Trustee exceed the allowed variances as set forth herein;

n. Entry of an order granting, or there shall arise, a claim that is equal or senior to the Superpriority Claims of the Bank;

o. The cessation of day-to-day operations of the Hospital;

p. Any loss of accreditation or licensing of the Hospital that would materially impede or impair the Hospital's ability to operate as a going concern;

q. The assertion by the Trustee (or any other party in interest) of claims arising under § 506(c) of the Bankruptcy Code against the Bank or the commencement of other actions adverse to the Bank or its rights and remedies under this Final Order, or any other Bankruptcy Court order;

r. Any material provision of this Final Order for any reason ceases to be enforceable, valid, or binding upon the Trustee or the Estate, or any party so asserts in writing;

s. Trustee's failure to use commercially reasonable efforts to pursue sale opportunities during the Initial Term; and

t. Trustee's failure to use commercially reasonable best efforts to pursue sale and refinancing opportunities during any extended term

The term "Default" herein means the occurrence of any event which except for the passage of time or the giving of notice or both would constitute an Event of Default (as defined in the Loan Agreements or in this Final Order (other than those Defaults or Events of Default excepted in this paragraph)).

47. <u>Remedies Upon Default</u>. Upon the occurrence of a Default or an Event of Default and after the Notice Period has expired and no applicable Court Order has been entered, the Bank may exercise its rights and remedies and take all or any of the following actions without further modification of the automatic stay pursuant to § 362 of the Bankruptcy Code which is

25

hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions and without further order of or application to this Bankruptcy Court: (a) suspend all Post-Petition Financing and Loans to the Trustee, and enjoin and prohibit the Trustee from using Cash Collateral to the extent that such Default or Event of Default would permit such relief under the Loan Agreements, as amended hereby; (b) suspend amounts in any accounts maintained with the Bank, or otherwise enforce rights against all or part of any Collateral in the possession of the Bank to the extent that such Default or Event of Default would permit such relief under the Loan Agreements (as amended in this Final Order with additional notice periods and otherwise); and/or (c) subject to the provisions this Order, take any other action or exercise any other right or remedy of the Bank under the Loan Agreements, this Final Order, or by operation of law. Upon the Trustee's receipt of a Default Notice, the Trustee shall immediately cease making any disbursements pursuant to the Budget or otherwise, subject to further order of the Bankruptcy Court after notice and a hearing.

48. <u>Reimbursement of Bank's Costs and Fees</u>. Without further order of this Bankruptcy Court, and in consideration of other accommodations provided by the Bank, the Estate shall reimburse the Bank for all reasonable out of pocket filing and recording fees, reasonable professional fees, and costs and expenses and internal audit fees and expenses incurred by the Bank: (a) in the preparation and implementation of this Final Order and the various Loans and other Post-Petition Financing; (b) in the representation of the Bank in this proceeding; and (c) as otherwise provided in the Loan Agreements (the "Bank's Costs and Fees"). The Bank's Costs and Fees will be part of the Post-Petition Indebtedness.

49. <u>Good Faith Protections</u>. Having been found to be extending credit and making Loans to the Trustee in good faith, the Bank shall be entitled to the full protection of § 364(e) of

153104924.1

the Bankruptcy Code with respect to the Post-Petition Financing and the Bank Liens created or authorized by this Final Order in the event that this Final Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal or vacation of this Final Order shall not affect the validity of any obligation of the Estate to the Bank incurred pursuant to this Final Order. Notwithstanding any such stay, modification, reversal or vacation, all Loans made pursuant to this Final Order, all use of Cash Collateral and all other Post-Petition Financing incurred by the Trustee pursuant hereto or the Loan Agreements prior to the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Bank shall be entitled to all the rights, privileges and benefits of this Final Order, including without limitation, the Bank Liens, and Superpriority Claims granted herein.

50. <u>Control Disclaimer</u>. The transactions contemplated by the Post-Petition Financing are not intended to provide the Bank with sufficient control over the Estate so as to subject the Bank to any liability in connection with the management of the Hospital or the Estate. By providing the Post-Petition Financing or taking any actions pursuant to this Order, the Bank shall not: (a) be deemed to be in control of the operations or liquidation of the Estate; or (b) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation, management or liquidation of the Estate.

51. <u>Continuing Effect of Order</u>. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, including without limitation (a) confirming any plan of reorganization in this case (and the Post-Petition Financing shall not be discharged by the entry of any such order or pursuant to § 1141(d)(4) of the Bankruptcy Code, the Trustee having hereby waived such discharge); (b) converting this case to a chapter 7 case; or (c) dismissing this

153104924.1

case, and the terms and provisions of this Final Order as well as the Superpriority Claims, and Bank Liens granted pursuant to this Final Order and Loan Agreements shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims, and Bank Liens shall maintain their priority as provided by this Final Order until all Bank Indebtedness is indefeasibly paid in full and discharged.

52. <u>Additional Requirements</u>.  The Bank's obligations under this Final Order are conditional upon and subject to (a) the payment of $50,000 ("Loan Fee") which shall be advanced as part of, and included in, the Post-Petition Financing; and (c) delivery to the Bank of evidence satisfactory to the Bank that the Collateral is insured for the full replacement value thereof and the Bank is named as loss payee and/or as additional insured on all insurance policies upon request of the Bank. The Bank may, at its sole discretion, retain additional third party consultants selected by the Bank to review matters pertaining to the business and properties of the Estate, each at the Estate's sole reasonable expense (collectively, the "Bank's Consultants"). The Trustee will permit the Bank's Consultants to examine the respective corporate, financial and operating records, and, at the Trustee's sole reasonable expense, make copies thereof, inspect the assets, properties, operations and affairs of the Trustee, visit any or all of the offices of the Estate to discuss such matters with their officers, independent auditors, accountants or consultants (and the Trustee hereby authorize such independent auditors, accountants and consultant to discuss such matters with the Bank's Consultants), and the Trustee will cooperate with the Bank's Consultants in all respects; provided however that the Trustee reserves his right to claim that any such documents are protected under attorney client privilege to the extent permitted under applicable law.

53. <u>Stipulations, Releases and Waivers</u>.

153104924.1

a. Upon entry of this Final Order, the Trustee's stipulations, releases and waivers contemplated in the findings of fact and conclusions of law shall be deemed binding upon the Trustee, the Estate, and all other parties, including, without limitation, subsequent trustees, subject to the terms and conditions of this Final Order. The Trustee's Stipulations above are binding upon the Trustee immediately upon entry of this Final Order.

b. The findings, stipulations, releases and waivers contained above shall be binding upon the Trustee, the Estate and all parties in interest, including without limitation, any statutory committees appointed in this case, unless a party in interest (other than the Trustee) has properly filed an adversary proceeding or commenced a contested matter (subject to the limitations set forth in this Final Order) challenging the amount, validity, enforceability, perfection or priority of the Bank Pre-Petition Indebtedness or the Bank's Pre-Petition Liens, or otherwise asserting any claims or causes of action against the Bank relating to the Bank Pre-Petition Indebtedness on behalf of the Estate, no later than the date that is forty five (45) days after entry of the Final Order (the "Challenge Deadline"), and the Bankruptcy Court subsequently enters a judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced as of the Challenge Deadline, then the findings, stipulations, releases and waivers contained above shall be binding and the Bank Pre-Petition Indebtedness shall constitute an allowed fully secured claim, not subject to subordination and otherwise unavoidable.

c. Subject only to the rights of set forth above, for all purposes in this case and any subsequent chapter 7 case, the Bank's liens on the Bank Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Bank, the Bank Pre-Petition Indebtedness and

29

the Bank's liens on the Bank Pre-Petition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Estate, including without, limitation, any successor thereto. If any such adversary proceeding or contested matter is properly commenced as of such date, the findings contained in the recital paragraphs of this Final Order shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter.

54. <u>Bank's Rights Not Prejudiced</u>. Except as expressly provided herein, this Final Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Bank may have against the Estate or any third parties, and without prejudice to the right of the Bank to seek relief from the automatic stay in effect pursuant to § 362 of the Bankruptcy Code, or any other relief in this case, and the right of the Trustee to oppose any such relief by contesting the existence of a Default or an Event of Default and as otherwise consistent with the terms of this Final Order. In no event shall the Bank be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Collateral.

55. <u>Authorization to Perform Additional Acts</u>. The Trustee is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Loan Agreements, as the Bank may reasonably require, as evidence of and for the protection of the Post-Petition Financing, or which otherwise may be deemed reasonably necessary by the Bank to effectuate the terms and conditions of this Final Order and the Loan Agreements.

56. <u>Waivers</u>. In order to be effective any waiver by Bank of the provisions of this Final Order or consent required under this Final Order must be in writing, which includes electronic mail.

30

57. <u>Financial Reporting and Inspection of Collateral</u>. Trustee shall provide a weekly report on actual revenue and expenses no later than Wednesday at 5:00 p.m. central time for the week preceding the week in which the report is made. Such report shall be in a form as mutually agreed to by the Trustee and the Bank. Further, the Trustee shall provide Bank the balance sheet and profit and loss statements no later than the 30th day of the month for the month proceeding the month in which the report is made. Additionally, the Bank shall have the right to examine all of Estate's books and records and the Collateral, including bank records relating to prepetition and post-petition time periods, upon three (3) business days advance notice, during normal business hours.

58. <u>Successors and Assigns</u>. The provisions of this Final Order shall be binding upon and inure to the benefit of the Bank, the Trustee, and their respective successors and assigns (including without limitation, any subsequent chapter11 or Chapter 7 trustee, examiner, or other fiduciary hereafter appointed for the Estate or with respect to any of the Estate's property).

59. <u>Conflicts</u>. To the extent there exists any conflict between the Loan Agreements, and the terms of this Order, this Order shall govern.

IT IS SO ORDERED.

###

153104924.1

SUBMITTED BY:
**STEVENS & BRAND, LLP**


**By: _s/ Patricia E. Hamilton_**
PATRICIA E. HAMILTON, #13263
WESLEY F. SMITH, #18517
917 S.W. Topeka Boulevard
Topeka, Kansas 66612
Telephone ~ (785) 408-8000
Facsimile ~ (785) 408-8003
E-Mail ~ WSmith@StevensBrand.com
E Mail ~ PHamilton@StevensBrand.com
**Counsel for Chapter 11 Trustee Brent King**

153104924.1